# CHARLES H. LIGHTHISER *vs.* JOHN A. ALLISON.

*Partnership—Holding Out as Member of Firm—When no Recovery on a Ground of Liability Not Mentioned in the Pleadings.*

The evidence in this case examined, and held to be insufficient to show that one of the defendants, who was not in fact a partner of the other defendant, had ever held himself out to the world as such, or permitted other persons to do so, and that consequently he is not liable to a creditor of the firm as a partner.

When the declaration charges the liability of one defendant to arise from his being a partner in a firm, and the evidence shows that he is not such a partner and had not permitted himself to be represented to others as such, then the plaintiff cannot recover against him upon the ground that he was the sole owner of the business carried on in the name of the other defendant, since the defendant's prayer, referring to the pleadings, excludes the right to recover upon a ground of liability not set forth in the pleadings.

Appeal from the Superior Court of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Walter I. Dawkins,* for the appellant.

*Frank D. Wynn* (with whom was *Alex. Hardcastle, Jr.,* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

John A. Allison sued Theodore J. Lighthiser and Charles H. Lighthiser in the Superior Court of Baltimore City to recover a sum of money claimed by him to be due by them as co-partners, trading as T. J. Lighthiser & Company. The declaration contains the common counts only. The two defendants pleaded separately. Charles H. Lighthiser pleaded, first, that he was never indebted as alleged; secondly, that he did not promise as alleged; and thirdly, that he had not at any time traded as co-partner with the other defendant, Theodore J. Lighthiser. The other defendant pleaded separately; first, that he never was indebted as alleged, but was indebted individually to the plaintiff; secondly, that he did not promise as alleged, but did promise individually; thirdly, that he never was at any time partner of Charles H. Lighthiser; and fourthly, that he individually contracted the debt for the recovery of which the action in this case was brought. The plaintiff joined issue on the first and second separate pleas of Charles H. Lighthiser and traversed the third plea upon which traverse issue was joined. On the 8th of June, 1904, judgment was entered against Theodore J. Lighthiser for $479.70, and the case went to trial on the issues joined on the pleas filed by Charles H. Lighthiser, and on June 10th, resulted in a verdict for the plaintiff for $544.44, upon which on June 13th, a judgment was entered against Charles H. Lighthiser and from that judgment this appeal has been taken by him. The record contains six bills of exception, five of which relate to rulings

as to the admissibility of evidence and the sixth concerns the action of the Court on the prayers presented for instructions to the jury.

From this statement of the issues involved in the trial it is apparent that the fundamental fact to be determined was the existence or non-existence of the alleged partnership between Charles H. and Theodore J. Lighthiser. It is not pretended that Charles H. Lighthiser is liable to the plaintiff unless he was a partner of Theodore J. Lighthiser or, as an alternative view, under one of the prayers, unless he was the sole owner of the business conducted in the name of T. J. Lighthiser and Company. The question then is really one of fact rather than of law.

The transaction out of which this controversy has arisen may be briefly stated as follows: T. J. Lighthiser was unquestionably engaged in the business of packing and planting Rappahannock oysters at a place called *Sharps* in the State of Virginia. He purchased from the plaintiff, Allison, several consignments of oysters during the month of January, 1902, which were loaded upon a vessel, either owned or controlled by T. J. Lighthiser and Company, and were shipped to Baltimore. It is for these oysters, the bills for which aggregate $744.90, less a credit of $265.20, that the suit was brought.

Now whether a partnership existed between these two Lighthisers depends, if the controversy were between themselves only, upon whether there was a contract between them creating a partnership, because that relation *inter sese* cannot exist against the consent and intention of the parties, *Waring v. Marine Bank*, 74 Md. 278. But as between them, on the one hand, and the creditor, on the other, it depends, either upon the existence of such a contract, or upon a course of conduct which induced others to believe that they were in fact partners, though as between themselves they might not have been such in reality. A person not a partner in fact may be liable as such to third persons upon the ground that he has held himself out to the world as such, or has permitted others to do so and is therefore estopped from denying that

he is one as against those who have in good faith dealt with the firm, or with him, as a member of it.   But it must appear that the person dealing with the firm believed, and had a reasonable right to believe, that the party he seeks to hold as a partner was a member of the firm and that the credit was to some extent induced by this belief.   And the holding out must have been by the authority or with the knowledge of the party sought to be charged.   *Fletcher* v. *Pullen*, 70 Md. 205.   This is so self-evident and just a principle that it does not need to be supported by further reference to adjudged cases.   It is obvious no one can be charged as a partner where the acts relied on for that purpose are neither his own acts, nor acts of others authorized by or made known to him. Even though it were generally supposed, believed and understood that a person is a partner in a concern, this would be insufficient evidence to prove that he was a partner.  *Bryden* v. *Taylor*, 2 H. & J. 395.

So the inquiry comes down then to these two questions: First.   Was there a contract of partnership between them? Secondly, were there such acts upon the part of Charles H. Lighthiser as would reasonably induce a creditor dealing with T. J. Lighthiser and Company to believe that Charles H. was or held himself out to be a partner ?

*First.*  There is nothing in the evidence from which it could be inferred that there was a contract creating a partnership between the two Lighthisers, but all the evidence upon that subject is distinctly and unequivocally the other way.   Without going into a detailed statement of it, it is sufficient to say that the uncontradicted evidence of both the parties to the alleged partnership was that there was no contract of that sort between them.   We may therefore proceed to the consideration of the other alternative.

*Second.*  Was there any evidence to show the existence of the alleged partnership, either by the declarations of Charles H. Lighthiser or by his course of conduct?  There is not a witness, whose testimony is contained in the record, who has deposed to any admission made by Charles H. Lighthiser to

the effect that he was a partner; but there are vague and indefinite statements made by Theodore J. Lighthiser out of the presence and not in the hearing of Charles H. Lighthiser, upon which reliance is placed to establish the alleged partnership. The plaintiff himself in testifying goes no further than to state that he understood that T. J. Lighthiser and Charles H. Lighthiser composed the firm of T. J. Lighthiser and Company. All of the negotiation for the purchase of the oysters charged for in the account sued on, were had between the plaintiff and Theodore J. Lighthiser, the former never having seen C. H. Lighthiser in Virginia. It further appears from the testimony of the plaintiff himself that he also negotiated with a certain Mr. Everett, whom Theodore J. Lighthiser had sent to him to purchase the oysters, and it was shown that Everett told the plaintiff that C. H. Lighthiser was a member of the firm of T. J. Lighthiser and Company. The plaintiff further testified that Everett was employed by Theodore J. Lighthiser and Company and that he was sent to complete the purchase of the oysters and that Everett told the plaintiff that Charles H. Lighthiser was interested in the business of T. J. Lighthiser and Company, but the plaintiff never made any further inquiry as to the fact of Everett's right or authority to act for the said T. J. Lighthiser and Company and that Everett was not a regular buyer, but merely a skimmer and did indoor work principally in the canning place. It further appears that Everett did not know Charles H. Lighthiser and had had no communication with him except one letter notifying him of the sickness of Theodore J. Lighthiser; and that when competition became strong Theodore had told Everett that Charles H. Lighthiser was a partner and was able to pay as much for goods as others. Everett testified that he saw Charles H. Lighthiser in the fall of 1902 in Baltimore, and told him that Theodore had had bad luck in Virginia and the witness then told Charles H. that the impression in Virginia was that he, Charles H., was a partner in January, 1902, as well as in November and December, 1901, and that Charles H. then told the witness that there had been no partnership at

any time, that the business had belonged to him until January 4th, 1902, and he then sold it to Theodore. C. R. Cralle also testified for the plaintiff that he had sold oysters to T. J. Lighthiser and Company; that he made no inquiry as to who composed the firm, but that Everett had told him that the firm was T. J. Lighthiser and Company and that C. H. Lighthiser was the company, and had the money to pay for all the oysters they bought. Another witness, Frederick Downing, testified that he understood that Theodore J. and Charles H. Lighthiser composed the firm of T. J. Lighthiser and Company and that Theodore told the witness that he was interested in the business with Charles H. Lighthiser, and that Everett also told the witness that Charles H. Lighthiser was a member of the firm. It is true that in September, 1901, Charles H. Lighthiser rented a small piece of property from Eli Sharp, at Sharp's Wharf, in Virginia, upon which an oyster house was built, but this lease was assigned January 1st, 1902, by Charles H. Lighthiser to Theodore J. Lighthiser. There were other witnesses examined, some of whom testified that they did not know who composed the firm of T. J. Lighthiser and Company and others of whom deposed that they understood that Charles H. Lighthiser was a member of the firm, but there is not a single witness who testified that Charles H. Lighthiser ever stated that he was a member of the firm. As against all this there is the explicit denial of both the Lighthisers that they were ever partners in the business. Upon this state of proof amongst other instructions asked by the defendant was the following: The defendant, Charles H. Lighthiser, prays the Court to rule as a matter of law, that there is no evidence in this case legally sufficient to establish a co-partnership as existing between the said defendants and that the plaintiff is, therefore, not entitled to recover under the pleading and evidence in this case and that the verdict must be for the defendant, Charles H. Lighthiser. That prayer was rejected, but in our view should have been granted. There was literally no evidence given to warrant the Court sitting as a jury to find that Charles H. Lighthiser was a member of the firm and as

a verdict had already been recorded against Theodore J. Lighthiser, who according to the evidence was the real debtor to the plaintiff, the Court should have directed a verdict to be entered for the defendant, Charles H. Lighthiser. This being so it becomes unnecessary to consider any of the other questions raised with respect to the admissibility of the evidence or the rulings of the Court on the other prayers for instructions.

With respect to the alternative view presented in the plaintiff's, or appellee's first prayer to the effect that Charles H. Lighthiser is responsible upon the assumption that he was the sole owner of the business conducted in the name of T. J. Lighthiser and Company, it is only necessary to say that under the pleadings no recovery could be allowed upon that theory, because the distinct issue for trial was, not the liability of Charles as sole owner of the business, but his liability as a member of the firm of T. J. Lighthiser and Company. Under the pleadings if he was not a member of the firm he was not answerable for the debts of the firm. The second prayer of the defendant, the appellant, which we have said ought to have been granted expressly refers to the pleadings, and therefore, excludes a right to recover upon the alternative ground above indicated. Concluding as we do that this prayer should have been granted it follows, of course, that the judgment rendered against Charles H. Lighthiser must be reversed and as no recovery can be had against him a new trial will not be awarded.

> *Judgment reversed as to Charles H.*
> *with costs above and below and new*
> *trial refused.*

(Decided December 1st, 1904.)