The case is stated in the opinion of the Court, and the several exceptions to evidence are therein sufficiently stated. The agreement or lease referred to in the opinion is as follows:
"This is to certify, that I have let and rented unto R. W. Bramble, the part of the East Cambridge farm lying southeast of the railroad, and the hedge south of the apple and pear orchard, containing about fifteen acres of land, for the term of six years, beginning on the first day of January, eighteen hundred and eightyone, and ending on the first day of January, eighteen hundred and eighty-seven, and furnish with said land a dwelling house with four good rooms, with stable and place for cart, and other purposes; the said land to be used for small fruit, vegetables and raising fruit trees; the said R. W. Bramble to furnish all plants, manures, and do or have done all planting, cultivating, picking, packing, hauling and shipping or whatsoever there is to be done; to deliver all produce raised in good merchantable order, at the usual places for shipment, or if sold at home, to deliver where sold at his expense, and pay unto W. M. Fletcher, one-half of all the money received for all the products raised, after deducting out of said amountexpenses for crates, boxes, freights and commission, or each paying half of said expenses for boxes, crates, freight and commission; and the said R. W. Bramble to make punctual payments of the rent in the manner aforesaid, cultivate and keep the premises in good order, and quit and surrender the premises at the expiration of said term *Page 208 
in as good state and condition as reasonable use and wear will permit, damages by fire excepted.
"Witness our hands and seals this fourth day of September, 1880.
"W. M. FLETCHER, [Seal.]
"R. W. BRAMBLE, [Seal.]"
"Test: — M. B. CORSEY."
The cause was tried before the Court without the intervention of a jury, and the defendant offered the five following prayers, each of which was made the subject of a separate exception; the exceptions being numbered respectively, eleven, twelve, thirteen, fourteen, and fifteen:
1. That no legally sufficient evidence has been offered entitling the plaintiffs to recover in this action against the surviving defendant, William M. Fletcher.
2. If the Court believe from the evidence that the advertisements which in the year 1884 were published in the "Democrat and News" and the "Dorchester Era," and the local notice published about the same time in the "Era," and which have been offered in evidence in the cause by the plaintiffs, were so published by the direction and on the authority of Robert W. Bramble, and without the authority and without the knowledge and consent of the surviving defendant, William M. Fletcher, and the circular which was printed by Putnam Flint, and the envelopes stamped with the names "Fletcher Bramble," and which have been produced in evidence by the plaintiffs, were published or printed and circulated upon the order of Robert W. Bramble, without the authority and without the knowledge and consent of the said Fletcher. And if the Court further believe from the evidence that the said Fletcher never entered into any written or verbal contract of partnership with said Bramble *Page 209 
in the nursery business, or any other business, and never held himself out as the partner of said Bramble in the same, and never authorized the said Bramble to hold him out as a partner in the same, and never authorized the said Bramble to use his name as a partner in said business, then that the said Fletcher was not bound to incur trouble and expense for the purpose of publishing in said newspapers or other newspapers a contradiction of the advertisements and the local notice, even if the Court also believe that said advertisements and local notice were brought to his knowledge by seeing the same in said newspapers soon after their publication therein.
3. If the Court believe from the evidence that Robert W. Bramble, without the knowledge or consent of Wm. M. Fletcher, the surviving defendant, and without any authority whatever from him, published, or caused to be published, the advertisements in the "Democrat and News" and "The Dorchester Era," and the local notice in the "Era," which have been offered in evidence by the plaintiffs, and that he also caused the circular to be printed, which is offered in evidence, and circulated the same without the said Fletcher's knowledge, consent or authority, and that he, in like manner, used the envelopes with the names of Fletcher Bramble printed thereon, then if the Court shall further believe that the said Fletcher never entered into a partnership with the said Bramble in the nursery business, or any other business, and that said Fletcher never held himself out as such partner of said Bramble, and that he had never authorized said Bramble to hold him out as such partner, or to use his name as a partner, and if they shall further believe that the said Fletcher never heard or knew of said circulars or said envelopes till the time of this cause, and that the plaintiffs never knew of said newspaper *Page 210 
advertisements and local notice till after the goods were sold and delivered, then the said Fletcher was not bound to incur the trouble and expense of publishing in said newspapers, or other newspapers, contradictions of said advertisements and local notice, even though such advertisements and local notice came to his knowledge soon after the publication was begun; provided, that whenever such advertisements or local notice, or such alleged partnership was brought to his attention, he denied and repudiated such partnership and contradicted said advertisements and local notice, and denied that said Bramble had published the same under authority from him.
4. If the Court shall believe from the evidence the facts set out in the defendant's third proposition of law, and if they shall further believe that the said Robert W. Bramble, without the knowledge, consent or authority of the said Fletcher, did obtain from the plaintiffs the goods mentioned in their cause of action, in the manner and by the means mentioned in the evidence of James F. Anderson, then the said Fletcher is not liable to the plaintiffs for said goods, and the plaintiffs are not entitled to recover in this action.
5. If the Court believe from the evidence that the advertisements which appeared in the "Democrat and News," and the "Dorchester Era," and the local notice which appeared in the "Era," and newspapers published at Cambridge, Dorchester County, and which have been offered in evidence at the time of the cause, were published on the direction and authority of Robert W. Bramble, without the knowledge, consent or authority of William M. Fletcher, the surviving defendant, and the said advertisements and local notice never came to the said Fletcher's knowledge till after they were published; and if they shall further believe from the evidence, that the circular offered in *Page 211 
evidence as printed by Putnam Flint, was printed upon the direction and authority of said Bramble, and that the envelopes offered in evidence with the names of Fletcher and Bramble stamped or printed thereon, were also printed upon the direction and authority of said Bramble, and that the said circular and envelopes were printed and circulated without Fletcher's knowledge, consent or authority, and. that he never saw, heard of, or knew about said circular or envelopes till they were produced in evidence at the time of the cause; and if they further believe from the evidence that the letters addressed to the plaintiffs, and purporting to be from Fletcher and Bramble, were written and forwarded by said Bramble without Fletcher's knowledge, consent, or authority, and that the goods mentioned in the plaintiffs' cause of action, were furnished by the plaintiffs and received by said Bramble without Fletcher's knowledge, consent or authority, and that the furnishing of said goods and their being received by said Bramble did not come to the knowledge of said Fletcher until months thereafter; and if they further believe that said Fletcher never did enter into copartnership relations with Bramble in the nursery business, or any business, and that he never held himself out as such partner, and never authorized said Bramble to hold him out or to use his name as such partner; and if they further believe that whenever said advertisements, local notice or the said alleged partnership was brought to his attention, that said Fletcher repudiated the same as published with his knowledge, or on his consent or authority, and denied that any such partnership existed, or had ever existed, and that he often repudiated and denied the same, of his own motion and suggestion, and that he did so to Cambridge people and county people out of Cambridge; and if they further believe that said advertisements and local notice never *Page 212 
came to the notice or knowledge of the plaintiffs until sometime after the said goods were forwarded and received, and that they were not induced by said advertisements or notice, or on the credit ofFletcher, to furnish said goods, then the Court should find for the defendant; although they may further believe that the said Fletcher did not choose, at the cost of trouble and money to be expended by himself, to repudiate said advertisements and notice, or to deny said alleged partnership by means of advertisements or notices in the same or other newspapers.
The Court (HOLLAND, J.,) rejected the first, second, third, and fourth prayers of the defendant, and rejected also the fifth prayer as offered, but granted it after amending it by adding the words "or on the credit of Fletcher" printed in italics. The defendant excepted, and the verdict and judgment being against him appealed.
The plaintiffs who are nurserymen in Milford, Delaware, sued Bramble and Fletcher as partners in the same business at Cambridge in this State, for fruit trees sold and delivered to them in the autumn of 1886. Bramble died before the trial, and Fletcher defended upon the ground that he was not a partner. The exceptions relate mainly to the admissibility of evidence upon the question, not whether Fletcher and Bramble were actually partners inter sese, but whether Fletcher *Page 213 
had held himself out, or had permitted himself to be held out, as a partner, so as to become responsible to third parties.
The law on this subject, well established by authority, may be stated thus: The ground of liability of a person as partner who is not so in fact, is that he has held himself out to the world as such, or has permitted others to do so, and by reason thereof is estopped from denying that he is one as against those who have, in good faith, dealt with the firm or with him as a member of it. But it must appear that the person dealing with the firm believed, and had a reasonable right to believe, that the party he seeks to hold as a partner was a member of the firm and that the credit was, to some extent, induced by this belief. It must also appear that the holding out was by the party, sought to be charged, or by his authority or with his knowledge or assent. This where it is not the direct act of the party may be inferred from circumstances, such as from advertisements, shop-bills, signs or cards, and from various other acts from which it is reasonable to infer that the holding out was with his authority, knowledge, or assent. And whether a defendant has so held himself out, or permitted it to be done, is in every case a question of fact, and not of law. Thomas vs.Green, 30 Md., 1; 1 Lindley on Part., 45; Thompson vs. First NationalBank, 111 U. S., 536, 537; 5 Waite's Actions Defences, 113,114. These general rules apply to the present case.
The evidence shows that there was, in or near Cambridge, a fruit farm and nursery on about fifteen acres of Fletcher's land which Bramble had occupied and managed from the year 1881 to 1887. The plaintiffs then proved that in October and November, 1886, they received several letters, postal-cards, telegrams, and circulars from Cambridge, signed "Fletcher Bramble," representing them to be partners, and the envelopes *Page 214 
in which the letters were enclosed were stamped with the same firm name. These letters contained orders for fruit trees, and the first of them gave a reference to a Mr. Van Horst, formerly of Milford, but then residing in Cambridge. The plaintiffs not knowing the firm, nor by whom the letters were written, wrote to Van Horst and others inquiring as to its credit and standing, and in reply received information to the effect that Fletcher was entirely responsible, but that Bramble was worth nothing. Upon this information, and receiving no intimation that Fletcher was not a partner, they filled the orders and delivered the trees, relying npon his credit. Each item of this testimony was excepted to as it was offered, upon the ground that these letters, circulars, and envelopes were written and gotten up by Bramble without Fletcher's knowledge or consent. We think, however, they were all admissible, not because the acts and declarations of Bramble would bind Fletcher, as of course they would not unless he was an actual partner, but for the purpose of showing that the plaintiffs believed, and had good reason to believe that he was a partner, and that they trusted the supposed firm upon the faith of his responsibility. To prove this was an important link in the plaintiffs' case, and evidence tending to prove it was in our opinion admissible.
The plaintiffs then proved that an advertisement signed "Fletcher Bramble," calling attention to their nursery, offering theirtrees for sale, and soliciting from the public continuance of confidence and orders, was published in two weekly newspapers of Cambridge where Fletcher lived for three months during the year 1884. In one of these papers there was also a local notice of the advertisement. These were also prepared, inserted, and paid for by Bramble without Fletcher's knowledge, but it was proved that during the time of *Page 215 
their publication he was a subscriber to both papers, and they wereregularly sent to him. There is also clear proof that he actuallyknew of them while they were being published and never inserted in either of the papers any denial of the partnership. From all this it was competent for a jury to infer that he was held out to the public by Bramble as a partner, with his knowledge and assent, and we are of opinion the plaintiffs were entitled to prove this though they never saw the advertisements and were not influenced by them in trusting the firm. They had already proved they had so trusted it in good faith, and upon good grounds, and we think they had the right to resort to these antecedent advertisements and to this proof for the purpose of showing that Fletcher had been so held out to the public with his knowledge and assent. It was evidence to go to the jury upon that subject, and if uncontradicted would have made him a partner, at least, as to all third parties who had trusted the firm in good faith upon that supposition. Having knowledge of these advertisements it was his duty to deny the partnership if he wished to escape liability. But what was he to do and how much? We do not say he was under a legal obligation to publish a repudiation of the partnership in the same newspapers or in any other, though this would seem to be a very obvious and the most efficient mode of proclaiming such denial, and the fact that he failed to do so was a circumstance to go to the jury. But we take it that the rule upon this subject stated by a very eminent jurist is reasonable and just: "If one is held out as a partner and he knows it, he is chargeable as one unless he does all that a reasonable and honest man should do under similar circumstances, to assert and manifest his refusal, and thereby prevent innocent parties from being mislead." Parsons on Part., 134. *Page 216 
It follows that the Court below was right in admitting all the evidence offered by the plaintiffs, and in rejecting the defendant's first prayer. In regard to his second, third, and fourth prayers all that need be said is, that the propositions they contain are all embraced in his fifth prayer which the Court granted, with a single modification to which we see no valid objection.
We come now to the rulings excluding certain evidence offered by the defendant to show and sustain his denial and repudiation of the partnership. His own testimony was to the effect that Bramble was simply his tenant of the land for the term of six years from 1881; that Bramble had a fruit tree nursery on the land, but he himself had nothing to do with it, and never entered into a contract of partnership with Bramble, either written or verbal, in the nursery business or any other; that he never held himself out as such partner, and never lent his name or authorized the use of it by Bramble with reference to this business or any other; that he never knew of the letters, circulars, and envelopes written and used by Bramble until they were produced in Court at the trial; that the advertisements and local notice were inserted without his knowledge or consent, and he never knew any thing about themuntil they appeared in the papers; that he never put himself to the trouble and expense of publishing in these papers or in any others a contradiction of the advertisements, but had on all occasions to town people and country people when the subject was mentioned to him, and often when it was not, denied the existence of any partnership, and repudiated the advertisements as unauthorized by him. All this was allowed to go in without objection, but it is to be observed that he admits he knew of the advertisements which clearly and publicly proclaimed the partnership, and never published in any newspaper *Page 217 
any denial of it. We have said he was under no legal obligation to make publication, but that it was his duty to do all that a reasonable and honest man should do under similar circumstances to manifest his denial. This is the important question in the case and it was one solely for the jury to determine. On this issue of fact he was entitled to adduce all the evidence he could, leaving it for the jury to decide whether upon the whole of it, they thought he had done all that a reasonable and honest man ought to have done. Under this rule he was entitled to the benefit of any evidence in corroboration of his own testimony which tended to prove the publicity of his denial. Now in addition to his own general evidence on this subject he offered to prove:
1st. By the editor of one of the papers in which the advertisement and notice appeared, that when the witness called upon him to pay for the same, he refused to do so, repudiated all partnership with Bramble, declared he had nothing to do with Bramble's business, and would have nothing to do with his bills.
2nd. By the postmaster of Cambridge, that soon after the publication of the advertisements, witness delivered to Fletcher certain mail matter addressed to "Fletcher Bramble," but he returned it unopened, and refused to accept the same, telling witness he had nothing to do with Bramble's business, and was no partner of his.
3rd. That in July, 1885, he and Bramble were sued as partners by the steambeat company before a magistrate in Cambridge on a bill for freight; that there was a crowd at the trial, and he resisted the suit and refused to pay the account, on the ground that he had nothing to do with Bramble's business; that the magistrate gave judgment in his favor, and the case was much discussed in the community, especially by the *Page 218 
steamboat agent who made great complaint, because the magistrate had decided in his favor.
In our opinion these items of evidence should have been admitted. It is not for this Court to pass upon their weight or effect, no matter how slight or inadequate as a denial of the partnership publicly proclaimed in the newspapers, we may deem them to be. This is a matter solely for the jury. Our duty is simply to determine the question of their admissibility as evidence, and we think the Court erred in rejecting them.
We are also of opinion that the agreement, or lease as it is called, between Fletcher and Bramble, for the land upon which the nursery was carried on, should have been admitted. It was part of the defendant's case to prove that he was not an actual partner with Bramble. This agreement was admissible for that purpose, if he could show that by its true construction, it merely created the relation of landlord and tenant between them.
The errors in rejecting the items of evidence referred to, requires us to reverse the judgment and award a new trial. But in view of the fact that the Court below, acting as a jury, found for the plaintiffs notwithstanding they had granted the defendant's fifth prayer, in which all his own testimony in denial of the partnership was expressly submitted to the consideration of the Judges, we think each party should be required to pay his own costs, both in this Court and in the Court below.
Judgment reversed, each party to pay his own costs in this Court andin the Court below, and new trial awarded.
 *Page 53